SEALED 

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Louisiana

| | |
|---|---|
| United States of America<br>v.<br><br>SAM DESMOND SCHULMAN<br><br>*Defendant(s)* | )<br>)<br>) Case No. 13-145 MAG<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  May 25, 2013 - November 1, 2013  in the parish of        Orleans        in the   Eastern   District of    Louisiana   , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | conspiracy to violate Title 18, United States Code, Section 842(a)(1), that is, engaging in the business of importing, manufacturing, or dealing in explosive materials without a license issued under this chapter. |

This criminal complaint is based on these facts:

see attached Affidavit

☑ Continued on the attached sheet.

___ Fee _____
___ Process USM
 X  Dktd _____
___ CtRmDep ____
___ Doc. No. ____

*Complainant's signature*

Special Agent Ronald Reed
Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   11/01/2013

*Judge's signature*

City and state:       New Orleans, Louisiana           Honorable Daniel E. Knowles, III, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, RONALD REED, being duly sworn, depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and assigned to the New Orleans Field Office. I have been employed as a Special Agent for over ten (10) years, and have participated in numerous investigations and arrests, including cases involving bomb threats. I am presently assigned to the Joint Terrorism Task Force, based in New Orleans, Louisiana.

2. I am familiar with the circumstances of the offenses described in this affidavit through a combination of personal knowledge of the facts; discussions with other FBI Special Agents; discussions with other law enforcement officials; and other investigative activities conducted and investigative materials obtained during the investigation.

3. I make this affidavit in support of an application for issuance of a criminal complaint and arrest warrant for SAM DESMOND SCHULMAN for violating Title 18, United States Code, Section 371, conspiracy to violate Title 18, United States Code, Section 842(a)(1), engaging in the business of manufacturing explosive materials. This affidavit does not include all facts known to me, but rather contains facts sufficient to support the issuance of an arrest warrant.

4. During the investigation into Schulman, the FBI developed and operated two separate Confidential Human Sources (CHSs), whom both know Schulman and communicate with him separately. Each CHS is aware of the cooperation of the other.

5. Schulman was known by an individual, identified as FBI Confidential Human Source #2 (CHS #2), as someone who was a self-proclaimed "bomb maker," and had been heard boasting of making many bombs in the past. Based upon conversations with Schulman, CHS #2 believed Schulman to be willing to build and sell a bomb.

6. On May 25, 2013, FBI confidential Human Source #1 (CHS #1) first made contact with Schulman at his place of employment, a small snowball stand located on Canton Street in New Orleans, Louisiana. Schulman requested that CHS #1 meet him on the following Saturday in order to discuss purchasing explosives.

7. On July 29, 2013, CHS #1 conducted a consensually monitored telephone call with Schulman at the Anytime Fitness located in the Gentilly area of New Orleans, Louisiana. CHS arranged to deliver money to Schulman for a "cord" Schulman was going to order for him. CHS #1 understood that he/she and Schulman were actually talking about the purchase of a bomb. Schulman acted nervously and requested CHS meet him at the

Anytime Fitness instead of his home because CHS #1's presence was "spooking" Schulman's roommate.

8. In approximately late September 2013, CHS #1 and CHS #2 met with Schulman at Schulman's residence. CHS #1 reported that he/she conducted a private conversation at that time in which CHS #1 and Schulman discussed the purchase price for an explosive device. CHS #1 reported that Schulman quoted a price of $50,000. No further specifics were discussed at that time.

9. On October 10, 2013, CHS #1 conducted a consensually monitored conversation with Sam Schulman at Schulman's residence of 5207 Spain Street, New Orleans, Louisiana. During the conversation, Schulman asked CHS #1 if he/she met with his/her people regarding the amount of money Schulman was charging and the time frame for the bomb. Schulman advised CHS#1 that he expected to be paid $50,000 to complete the task. CHS #1 told Schulman that "his people" were happy with the deal and ready to do it. Schulman asked what specifically they wanted. CHS #1 reiterated to Schulman that his/her people wanted something big enough to blow-up a car. Schulman advised CHS #1 that he would put all the information on an SD card, and further explained that the bomb would be made with regular items obtainable at a grocery store. Schulman assured CHS #1 that the materials would not be traceable. CHS #1 asked Schulman, based upon a previous conversation, if he still planned to bring in a friend of his on the deal. Schulman replied, "No, I'm going handle it myself." Schulman told CHS #1 to bring a computer, prepaid wireless card with 5 gigabytes, and a SD memory card. Schulman said it would only take him a day or two to complete the task, but he preferred if CHS #1 told his people it would be a week, so it would not be a hassle if it was to take longer. Schulman explained that there would not be video on the SD card. Once prepared, the SD card would have a schematic of the bomb and related material. Schulman said after the deal was done he would destroy the computer, so CHS #1 should not expect it back, and they would not have any contact for awhile. Schulman wanted the $50,000 payment, in cash, in twenty dollar bills.

10. On October 17, 2013, CHS #1 conducted a consensually monitored meeting with Sam Schulman at his place of residence, 5207 Spain Street, New Orleans, Louisiana. During the meeting, CHS #1 told Schulman that CHS #1 believed Schulman misunderstood him/her the last time they met. CHS #1 then asked Schulman if Schulman was only planning to give him/her instructions on how to make a bomb. Schulman replied "Yes." CHS #1 told Schulman that instructions are not what he wanted. CHS #1 explicitly explained to Schulman that he/she wanted to purchase a completed bomb, not instructions, but if he could not make one he/she understood and they would still be

friends. Schulman advised he could and would make the bomb, but it would cost $125,000 and take about two weeks to complete.

11. On October 27, 2013, CHS #1 advised SA Ronald Reed that he/she was telephonically contacted by Schulman at approximately 11:50 a.m., from telephone number (504) 252-0406. During the call Schulman asked CHS #1 why Schulman hadn't heard from CHS #1 lately. CHS#1 advised Schulman that his/her people think his price is too high, therefore he/she has been in and out of town looking into other resources. Schulman told CHS that he wanted to talk to him, because he might need a few dollars to get something. CHS asked, "Something like what?" Schulman replied, "Something for what you been asking me to do." CHS advised Schulman that he would get back with him early this week and ended the call.

12. On October 28, 2013, CHS #2 advised agents that he spoke to Sam Schulman during the previous week. During the conversation Schulman asked CHS #2 if CHS #1 was serious (presumably about requesting the purchase of the bomb) and if CHS #1 will have the money. CHS #2 replied, "Yes, I think (CHS #1) is serious." CHS #2 asked Schulman how he was going to complete the job, considering he didn't have any money. Schulman told CHS #2 that he has a friend who will help him "put it together," but he didn't want CHS #1 to know about the friend as Schulman didn't want to split the money. CHS #2 asked Schulman if he knew what he was doing. Schulman replied, "Yes, don't worry I know what I'm doing."

13. On October 29, 2013, CHS #1 met with Schulman in order to further discuss the purchase of a bomb and to provide funds to purchase materials for the device. CHS #1 and Schulman met at Schulman's residence. CHS #1 provided Schulman with $1,000 of United States currency. Schulman told CHS #1 that CHS #1 didn't have to count the money, as Schulman would not deal with CHS #1 if he did not trust CHS #1. During the course of the conversation, CHS #1 told Schulman that he/she spoke with others and reiterated that Schulman did not suggest using the cell phone as a detonator for the device. Schulman advised CHS #1 that he was not an expert in the field, therefore he would not say it isn't possible. Schulman mentioned that in order to use a radio frequency device to detonate a device, there are additional concerns to consider, such as "what if someone calls while you are putting the device together, etc." The CHS explained that the explosive device should be "just enough to destroy the car," to which Schulman replied that he was glad, because something more than that would be stupid. Schulman added that he is not "trying to be on 60 Minutes."

14. On October 31, 2013, while providing transportation to Schulman to work, Schulman requested that CHS #2 give Schulman a ride to Lowe's Home Improvement Store. Schulman did not want CHS #1 to give him the ride. CHS #2 drove Schulman to the Lowe's Home Improvement Store located at 2501 Elysian Fields Avenue, New Orleans, Louisiana. The two entered the store and purchased the following items: (a) 14 gauge green primary wire; (b) a package of "Push-In Connectors;" and (c) a pack of fuses,

which are referred to upon receipt as Holiday/Party lights. Schulman paid for the items with a debit card in his own name and the two left the store. CHS #2 returned Schulman to his residence after completion of the purchase.

15. Upon consultation with FBI Special Agent Bomb Technician Ira Jones, the following opinion was offered about the purpose of the items purchased relative to their use in constructing an explosive device: (a) Green 14 gauge wire – Although a fairly thick gauge wire, this type of wire could be used as a conductor (i.e. wiring) for an explosive device; (b) the male/female "Push-In Wire Connectors" could be used to connect strands of wire together. The most likely reason for the use of this is to avoid soldering or taping the wires. It may also be used for safe transport (i.e. not make final connection until prepared to place the device); and (c) 3 amp holiday light fuses. Holiday lights can commonly be used as a detonator, and fuses may possibly be used to ensure the lights are in working order. Additionally, through database queries, three previous occasions were identified in overseas incidents where car fuses acted as a "Safe Arm" switch to prevent a device from prematurely detonating. Holiday light fuses may conceivably be used in the same manner.

16. On October 31, 2013, CHS #1 met with Schulman at his residence. Schulman explained to CHS #1 that he purchased several items for the construction of the car bomb. Schulman showed the items to CHS #1 and further explained that he contacted his partner (yet unidentified co-conspirator), who advised that he made a good start, but would require a lot more items. Schulman advised CHS #1 that he intended to use C4 as an explosive charge, and explained that the bomb would be attached to the underside of a vehicle. Schulman further explained that C4 was expensive and would require additional money.

17. In summary, Sam Desmond Schulman, who is not licensed to engage in the business of importing, manufacturing or dealing in explosive materials, agreed on several occasions to construct an explosive device, specifically a car bomb, and to sell same to CHS #1 for the purpose of blowing up a car. CHS #1 provided Schulman with $1,000 as an advance to purchase materials to construct the bomb. Schulman stated that he was working with someone construct the device. On October 31, 2013, Schulman requested that CHS #2 provide him with transportation to Lowe's Home Improvement Store to purchase materials to make the bomb. CHS #2 transported Schulman to Lowe's, whereupon Schulman purchased specific materials that are used in the construction of an explosive device.

18. For these reasons explained above, I respectfully submit that there is probable cause to believe that Sam Desmond Schulman violated 18 U.S.C. § 371, conspiracy with a yet unknown individual to violate 18 U.S.C. § 842(a)(1), which states: It shall be unlawful for any person, (1) to engage in the business of importing, manufacturing, or dealing in explosive materials without a license issued under this chapter.

Special Agent Ronald Reed
Federal Bureau of Investigation

Subscribed to and sworn before me
this 1st day of November, 2013.

Honorable Daniel E. Knowles, III
United States Magistrate Judge